1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    WASHINGTON SCHOOLS RISK
     MANAGEMENT POOL,
9                                                   Case No. C21-0874-LK
                         Plaintiff,
10                                                  AMENDED REPORT AND
            v.                                      RECOMMENDATION
11
     AMERICAN RE-INSURANCE
12   COMPANY et al.,

13                       Defendants.

14

15                         I.        INTRODUCTION

16          This is an insurance dispute concerning Plaintiff Washington Schools Risk Management

17   Pool's ("WSRMP") entitlement to reinsurance payments from Defendants Sompo International

18   Reinsurance and American Re-Insurance Company.  *See* Dkt. 27.  Defendant Sompo moves to

19   compel arbitration and dismiss WSRMP's claims pursuant to an arbitration clause in Sompo's

20   reinsurance policy with WSRMP.  Dkt. 21; Dkt. 32.  WSRMP moves on partial summary

21   judgment for an order holding that the arbitration clause is void, confirming that jurisdiction and

22   venue are proper in this Court, and determining that Washington law governs this lawsuit.  Dkt.

23   14.

Enforcement of the arbitration clause turns on the relationship between three sources of law:  (1) RCW 48.18.200(1)(b), which bars mandatory arbitration clauses in insurance contracts issued for delivery in Washington and covering subjects in this state; (2) the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, Sec. 3 (the "Convention"), which requires U.S. courts to enforce arbitration clauses upon request; and (3) the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, which provides that state insurance law reverse-preempts conflicting federal law.  The question is whether the Convention—an international treaty implemented by a congressional statute—is reverse-preempted by RCW 48.18.200(1)(b) under the McCarran-Ferguson Act.

For the following reasons, the Court finds that the Convention is not reverse-preempted. Accordingly, Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims, Dkt. 32, should be GRANTED and WSRMP's Motion for Partial Summary Judgment Re Arbitration and Choice of Law Provisions in Reinsurance, Dkt. 14, should be DENIED. Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Claims, Dkt. 21, should be DENIED as moot.

## II.    BACKGROUND

### A.    The Relevant Reinsurance Policy

WSRMP is a Washington interlocal cooperative whose membership includes various public school districts, educational service districts, and other public school interlocal cooperatives in Washington.  Dkt. 27 ¶ 1.  WSRMP is authorized to jointly self-insure risks; purchase insurance and reinsurance; and contract for risk management, claims, and administrative services for the benefit of itself and its member schools.  *Id.* at ¶ 18.  At all relevant times, Puyallup School District (the "District") was a member of WSRMP.  *Id.*

WSRMP issued a series of coverage agreements to the District, including (of relevance) an agreement for the 2003–2004 coverage year, effective from September 1, 2003 to August 31, 2004, and an agreement for the 2004–2005 coverage year, effective from September 1, 2004 to September 1, 2005 (the "Coverage Agreements"). Dkt. 27 ¶ 19. WSRMP then procured reinsurance from Defendants Sompo (the "Sompo Policy") and American Re-Insurance (the "American Re-Insurance Policy") covering losses that exceeded its self-insured limit. *Id.* at ¶ 30.

The Sompo Policy contained an arbitration clause (the "Arbitration Clause"), which provided, in relevant part:

> If any dispute should arise between the Reinsured and Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved whether such dispute arises before or after termination of this Agreement, such dispute, upon written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen . . . .

> . . . .

> . . . Said arbitration shall take place in Bermuda unless some other location is mutually agreed on by the parties to this Agreement. It is further agreed that the State of New York shall be deemed the state of jurisdiction in any matters of interpretation of law or disputes which may arise from such arbitration proceedings.

Dkt. 15 at 69–70, 79–80.

The Sompo Policy also contained a "choice of law" provision, which provided: "This Agreement shall be governed by and construed according to the laws of the State of New York." Dkt. 15 at 69, 79. Sompo is a citizen of Bermuda, Dkt. 34 ¶ 2, and it is undisputed that the Sompo Policy was issued for delivery to WSRMP in Washington and covers subjects in this state.

B.    <u>The Present Dispute</u>

Starting in 2005, the District was sued in three lawsuits, each alleging inappropriate relationships and/or sexual misconduct by a former District teacher (the "Underlying Lawsuits).

AMENDED REPORT AND RECOMMENDATION
- 3

1    Dkt. 27 ¶¶ 8–13.  The Underlying Lawsuits all settled, with payment by WSRMP pursuant to the

2    terms of the Coverage Agreements.  *Id.* at ¶¶ 15–17, 29.

3        Following settlement, WSRMP provided Sompo with documents detailing its settlement

4    payments and asked Sompo to reimburse it pursuant to the terms of the Sompo Policy.  Dkt. 27

5    ¶ 37.  Sompo disputed coverage and demanded arbitration under the Arbitration Clause.  *Id.* at

6    ¶ 38.  In response, WSRMP asked Sompo and American Re-Insurance to participate in

7    alternative dispute resolution with all three parties to avoid the possibility of inconsistent

8    outcomes.  *Id.* at ¶ 39.  Sompo declined this request.  *Id.*

9        On June 21, 2021, WSRMP filed suit against Sompo and American Re-Insurance in King

10   County Superior Court, seeking a declaration that Sompo and American Re-Insurance were

11   obligated to reimburse WSRMP for the amounts paid by WSRMP in settling the Underlying

12   Lawsuits, and bringing claims against them for breach of contract and injunctive relief.  *See* Dkt.

13   1-1.  On June 28, 2021, Sompo removed the action to this Court.  *See* Dkt. 1.

14       Subsequently, on July 15, 2021, WSRMP filed a Motion for Partial Summary Judgment,

15   Dkt. 14, asking the Court to rule as a matter of law that the Arbitration Clause and choice of law

16   provision in the Sompo Policy are void and inapplicable to this dispute.  On August 18, 2021,

17   after Sompo filed a Motion to Compel Arbitration and Dismiss WSRMP's Claims, Dkt. 21,

18   WSRMP filed an Amended Complaint, Dkt. 27, pleading additional claims for bad faith and for

19   violations of the Washington Consumer Protection Act, Chapter 19.86 RCW ("WCPA"), and

20   Washington's Insurance Fair Conduct Act, RCW 48.30.015 ("IFCA").  Sompo then filed a

21   Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims.  Dkt. 32.

22

23

1    Currently before the Court are (1) WSRMP's Motion for Partial Summary Judgment,

2    Dkt. 14, (2) Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Claims, Dkt. 21,[1]

3    and (3) Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims, Dkt.

4    32.

5                                III.    DISCUSSION

6    The Court must compel arbitration of WSRMP's claims against Sompo if (1) the

7    Convention controls, (2) the Arbitration Clause is enforceable under the Convention, and (3)

8    WSRMP's claims are arbitrable under the Arbitration Clause.  If RCW 48.18.200(1)(b) controls,

9    however, then the Arbitration Clause is invalid.  Thus, the Court must first determine whether

10   RCW 48.18.200(1)(b) reverse-preempts the Convention by operation of the McCarran-Ferguson

11   Act such that the Convention is inapplicable.

12       A.    Whether RCW 48.18.200(1)(b) reverse-preempts the Convention under the

13   McCarran-Ferguson Act

14       In most cases involving arbitration agreements, the enforceability of an arbitration clause

15   is governed by Chapter I of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), which

16   requires courts to order parties to proceed to arbitration in accordance with the terms of a

17   mandatory arbitration agreement.  In 1970, however, the U.S. acceded to the Convention.  *See*

18   Convention Done at New York June 10, 1958, 21 U.S.T. 2517 (entered into force with respect to

19   the United States Dec. 29, 1970).  Thereafter, Congress amended the FAA to implement the

20   Convention in Chapter II.  *See* 9 U.S.C. §§ 201–208.  The Convention applies to disputes that are

21   related to a foreign state or that involve foreign parties like Sompo.  *See* 9 U.S.C. § 202.  Article

22

23       [1] WSRMP's filing of its Amended Complaint, Dkt. 27, and Sompo's filing of its Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims, Dkt. 32, obviated the Court's need to rule on Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Claims, Dkt. 21.  Accordingly, this Motion, Dkt. 21, should be denied as moot.

1    II, Section 3 the Convention provides that "[t]he court of a Contracting State . . . shall, at the

2    request of one of the parties, refer the parties to arbitration . . . ."

3         While the FAA requires enforcement of binding arbitration clauses, RCW

4    48.18.200(1)(b) bars their enforcement in insurance contracts that are issued for delivery in

5    Washington and cover subjects in this state.  *See State, Dep't of Transp. v. James River Ins. Co.*,

6    176 Wn.2d 390, 399–400, 292 P.3d 118 (2013) (interpreting RCW 48.18.200(1)(b)).  It provides,

7    in relevant part, that "no insurance contract delivered or issued for delivery in this state and

8    covering subjects located, resident, or to be performed in this state, shall contain any condition,

9    stipulation, or agreement . . . depriving the courts of this state of the jurisdiction of action against

10   the insurer . . . ."[2]  The FAA would normally preempt this conflicting state law under the

11   Supremacy Clause; however, the McCarran-Ferguson Act creates a system of "reverse-

12   preemption" for insurance law.  *See United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 500–

13   02 (1993).

14        Under the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to

15   invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the

16   business of insurance . . . unless such Act specifically relates to the business of insurance."  15

17   U.S.C. § 1012(b).  Courts have held that, applying the McCarran-Ferguson Act, RCW

18   48.18.200(1)(b) reverse-preempts Chapter I of the FAA, which does not relate to the business of

19   insurance.  *See James River Ins. Co.*, 176 Wn.2d at 402; *Landmark Am. Ins. Co. v. QBE Ins.*

20   *Corp.*, No. C15-1444 RSM, 2015 WL 12631550, at *6 (W.D. Wash. Dec. 9, 2015).

21        WSRMP argues that RCW 48.18.200(1)(b) also reverse-preempts the Convention.  Dkt.

22   25 at 4–7.  It contends that the Convention is not self-executing, and instead is only enforceable

23

---

[2] RCW 48.18.200(2), in turn, voids any "condition, stipulation, or agreement  in violation of this section . . . ."

through Chapter II of the FAA, which qualifies as an "Act of Congress" within the meaning of the McCarran-Ferguson Act. *Id.* WSRMP therefore contends that because the Convention does not relate to the business of insurance, it, like the FAA, is reverse-preempted by RCW 48.18.200(1)(b). *See id.* And because the Sompo Policy qualifies as "insurance" and Sompo as an "insurer" within the meaning of the statute, the Arbitration Clause is void under RCW 48.18.200(1)(b). *See* Dkt. 14 at 6–8.

Sompo argues that the relevant portion of the Convention—Article II, Section 3—is self-executing, meaning it does not require Chapter II of the FAA or any other "Act of Congress" to be enforceable domestically. Dkt. 24 at 4–5; Dkt. 38 at 3–4. For this reason, Defendant contends the McCarran-Ferguson Act is inapplicable and the Convention preempts RCW 48.18.200(1)(b) under the Supremacy Clause, meaning the Court must compel arbitration and dismiss WSRMP's claims.[3] *Id.*

The Ninth Circuit's recent decision in *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, 8 F.4th 1007 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 862, 211 L. Ed. 2d 569 (2022), is dispositive. In that case, the court affirmed a decision from this District in which Judge Leighton held that the Article II, Section 3 of the Convention is (1) self-executing, (2) not an "Act of Congress" that is subject to preemption under the McCarran-Ferguson Act, and (3) not reverse-preempted by RCW 48.18.200(1)(b). *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, No. 3:19-CV-05785-RBL, 2019 WL 7185547, at *5 (W.D. Wash. Dec. 26, 2019), *aff'd*, 8 F.4th 1007 (9th Cir. 2021). As a result, Judge Leighton

---

[3] Sompo also argues that even if RCW 48.18.200(1)(b) does reverse-preempt the Convention by operation of the McCarran-Ferguson Act, the provision does not apply to reinsurance contracts like the Sompo Policy. Dkt. 32 at 20–24. Because the Court decides this issue on other grounds, it does not address either party's arguments on this point.

AMENDED REPORT AND RECOMMENDATION
- 7

1    determined that the Convention controlled and the parties' arbitration clause was not barred by

2    Washington law.  *Id.*

3         The Ninth Circuit agreed, holding: "Article II, Section 3 of the [Convention] is self-

4    executing, and it requires enforcement of the parties' arbitration agreement.  Because the

5    Convention is not an 'Act of Congress' subject to reverse-preemption by the McCarran-Ferguson

6    Act, the district court correctly granted defendants' motion to compel arbitration."  *CLMS Mgmt.*

7    *Servs.*, 8 F.4th at 1017–18.

8         The Court here holds the same here.  Assuming (1) the Arbitration Clause is enforceable

9    under the Convention, and (2) WSRMP's claims are arbitrable under the Arbitration Clause, the

10   Court must compel arbitration.

11        B.      Enforceability of the Arbitration Clause under the Convention

12        The Convention applies to "[a]n arbitration agreement . . . arising out of a legal

13   relationship, whether contractual or not, which is considered as commercial."  9 U.S.C. § 202.

14   "Courts generally address four factors to determine whether to enforce an arbitration agreement

15   under the Convention."  *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 655 (9th Cir. 2009)

16   (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir. 2005); *Standard Bent Glass*

17   *Corp. v. Glassrobots Oy*, 333 F.3d 440, 449, 449 n.13 (3d Cir. 2003)).  "These four require that

18   (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement

19   provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises

20   out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a

21   party to the agreement is not an American citizen, or that the commercial relationship has some

22   reasonable relation with one or more foreign states."  *Id.* at 654–55 (citation omitted).  If an

23   arbitration agreement satisfies all four factors, then a court must enforce it unless the agreement

1    is "null and void, inoperative or incapable of being performed."  Convention, Art. II(3); *see also*

2    *Balen*, 583 F.3d at 654–55.

3    The Arbitration Clause satisfies all four requirements.  The parties' reinsurance

4    relationship is commercial in nature and governed by a written agreement with an arbitration

5    clause that calls for arbitration in Bermuda.[4]  Further, Sompo is a citizen of Bermuda.  Dkt. 34

6    ¶ 2.  WSRMP does not dispute that the Arbitration Clause meets this standard and that, if the

7    Arbitration Clause is valid, the Convention governs.[5]

8    Moreover, the Arbitration Clause is not "null and void, inoperative or incapable of being

9    performed."  Convention, Art. II(3).  For the purposes of the Convention, an arbitration clause is

10    "null and void" in instances of fraud, mistake, duress, and waiver that can be applied "neutrally

11    on an international scale."  *Bautista*, 396 F.3d at 1302; *see also Mitsubishi Motors Corp.*, 473

12    U.S. at 659.  WSRMP does not contend that the Arbitration Clause is "null and void" under this

13    standard, nor does it contend that the parties' agreement to arbitrate is inoperative or incapable of

14    being performed.  Instead, WSRMP argues that its rights under the Sompo and American Re-

15    Insurance Policies should be arbitrated together and that it would be against public policy to

16    require WSRMP to arbitrate with Sompo separately.  Dkt. 25 at 7–8; Dkt. 36 at 5–9.

17    Article V of the Convention provides, in relevant part, that "[r]ecognition and

18    enforcement of an arbitral award may . . . be refused if the competent authority in the country

19    where recognition and enforcement is sought finds that . . . the recognition or enforcement of the

20    award would be contrary to the public policy of that country."  Convention, Art. V(2)(b).  "In

21

22    ───────────────

[4] Bermuda is a territory of the United Kingdom, which is a signatory to the Convention.

23    [5] While WSRMP initially failed to address the Convention in its Motion for Partial Summary
Judgment, instead proceeding as though the FAA governs the Arbitration Clause, Dkt. 14 at 10–13, it
tacitly concedes that the FAA is inapplicable and that the Convention governs.  See Dkt. 25 at 4–7.  The
Court therefore does not address WSRMP's arguments pertaining to the FAA.

1  recognition of a presumption favoring upholding international arbitration awards under the

2  Convention, this defense is 'construed narrowly.'" *Ministry of Def. & Support for the Armed*

3  *Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1096–97 (9th Cir.

4  2011) (citation omitted).  It applies only when confirmation or enforcement of a foreign

5  arbitration award "would violate the forum state's most basic notions of morality and justice."

6  *Id.* at 1097 (citations omitted).  Although this defense is frequently raised, it "has rarely been

7  successful."  *Id.*  (citation omitted).

8          Sompo argues, as a preliminary matter, that WSRMP cannot invoke this defense because

9  it only applies when a party challenges the enforcement of an arbitration award, not an

10  agreement to arbitrate.  Dkt. 38 at 5–6.  The Court agrees.[6]

11          By its terms, Article V's public policy exception only applies when a party seeks to

12  enforce a foreign arbitral award, not an agreement to arbitrate.  Convention, Art. V(2)(b)

13  ("[r]ecognition and enforcement of an *arbitral award* may . . . be refused . . . .); *Lindo v. NCL*

14  *(Bahamas), Ltd.*, 652 F.3d 1257, 1280 (11th Cir. 2011) ("Article V has no application in the

15  interlocutory procedural posture of this case, where NCL seeks to enforce arbitration at the

16  outset of the dispute."); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 372 (4th Cir. 2012)

17  ("The public policy defense, on the other hand, may only be asserted at the second stage of the

18  arbitration-related court proceedings, the 'award-enforcement stage'—i.e., after an arbitration

19  award has been made and the court is 'considering whether to recognize and enforce an arbitral

20  award.'") (citation omitted); *see also Mitsubishi Motors Corp.*, 473 U.S. at 638 (noting that the

21  "Convention reserves to each signatory country the right to refuse enforcement of an award

22

23          [6] Sompo also argues that this defense only applies in the most egregious of circumstances, which
    this is not.  Dkt. 38 at 6–9.  Because the Court agrees that this defense cannot be invoked to bar arbitration
    between the parties, it does not address whether WSRMP's allegations otherwise satisfy Article V.

where the 'recognition or enforcement of the award would be contrary to the public policy of that country[,]'" and that, "[h]aving permitted the arbitration to go forward, the national courts of the United States will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the antitrust laws has been addressed.") (citation omitted).

WSRMP is not invoking Article V's public policy exception in response to Sompo's attempted enforcement of an arbitral award, as no such award yet exists. Thus, WSRMP's public policy arguments are premature. If WSRMP's claims are arbitrable under the Arbitration Clause, the Court must compel arbitration.

C.    <u>Arbitrability of WSRMP's Claims</u>

The Arbitration Clause provides that "[i]f any dispute should arise between the Reinsured and the Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved whether such dispute arises before or after termination of this Agreement, such dispute . . . shall be submitted to three arbitrators . . . ." Dkt. 15 at 69, 79. The Ninth Circuit has deemed substantially similar arbitration clauses "broad" in nature. *See, e.g.*, *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir. 1997) (concluding arbitration clauses were broad in nature when they provided "if any dispute shall arise between [the parties] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved . . . such dispute shall be submitted to [arbitration]" and "[i]n the event of differences arising between the contracting parties with reference to any transactions under this Agreement, such differences must be submitted to arbitration.").

When an arbitration agreement contains a broad arbitration clause, the test for arbitrability is whether the factual allegations "touch matters" covered by the contract. *See*

1    *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  The existence of an arbitration

2    agreement establishes a federal presumption in favor of arbitration, and any doubts as to the

3    scope of an arbitration agreement should be resolved in favor of arbitrability.  *Moses H. Cone*

4    *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Simula, Inc.*, 175 F.3d at 719.

5          Thus, the Court must examine the allegations in the Amended Complaint to determine

6    which of WSRMP's claims "touch matters" covered by the Sompo Policy such that they are

7    arbitrable.  *Simula, Inc.*, 175 F.3d at 721.

8               1.    *Declaratory Relief*

9          WSRMP's Amended Complaint provides that an "actual controversy within the

10   jurisdiction of this Court exists between WSRMP and Defendants regarding the existence and

11   scope of coverages under the Sompo [Policy] and the American Re [Policy] with respect to

12   reinsurance applicable to the claims and damages alleged in the [Underlying Lawsuits] . . . ."

13   Dkt. 27 ¶ 41.  Further, it asks the Court to declare that (1) the Sompo Policy "reinsures WSRMP

14   for amounts WSRMP paid in defense, judgment, and settlement of claims against the District in

15   the [Underlying Lawsuits] . . ."; and that (2) the arbitration, choice of law, and venue provisions

16   in the Sompo Policy are void.  *Id.* at ¶¶ 48, 50.

17         These claims for declaratory judgment require the Court to interpret and construe the

18   terms of the Sompo Policy.  They therefore touch matters covered by the Policy and should be

19   arbitrated.

20              2.    *Breach of Contract*

21         WSRMP's breach of contract claim alleges Sompo has a contractual obligation to

22   WSRMP to reimburse it for claims paid by WSRMP pursuant to the terms of the Sompo Policy.

23   Dkt. 27 ¶ 52.  It further alleges that Sompo breached the Sompo Policy by "disputing coverage,

AMENDED REPORT AND RECOMMENDATION
- 12

refusing to reimburse WSRMP under the terms of the Sompo [Policy], and demanding arbitration under the void arbitration clause of the Sompo [Policy]." *Id.* at ¶ 53.  As a result, WSRMP alleges it is entitled to damages for Sompo's breach of contract.  *Id.*

Like its claim for declaratory judgment, WSRMP's breach of contract claim asks the Court to construe the terms of the Sompo Policy and analyze the parties' respective rights under the Policy.  It therefore touches matters covered by the Policy such that it should be arbitrated.

### 3.  *Injunctive Relief*

The Amended Complaint includes a claim for injunctive relief, seeking to prohibit any arbitration initiated under the "void" Arbitration Clause.  Dkt. 27 ¶¶ 54–56.  The Court has already determined that the Clause is enforceable and that claims covered by it are arbitrable. This claim should therefore be DISMISSED.

### 4.  *Bad Faith*

The Amended Complaint alleges that Sompo "breached its duty to act in good faith by placing its own financial interests ahead of those of WSRMP."  Dkt. 27 ¶ 57.  Any duty owed by Sompo to WSRMP to act in good faith arises from the Sompo Policy.  *See Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013).  Thus, WSRMP's claim that Sompo breached this duty touches the Sompo Policy and is arbitrable.

### 5.  *Statutory Claims*

In its Amended Complaint, WSRMP brings claims against Sompo for alleged violations of the WCPA and IFCA.  Dkt. 27 ¶¶ 58–62.  WSRMP alleges these claims are not arbitrable because they pertain to rights created by statute, which "cannot be encompassed in even a broad reading of the arbitration provision."  Dkt. 36 at 9.

1      WSRMP cites *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419–20 (9th Cir.

2 1984), in which the Ninth Circuit distinguished between statutory and contractual claims in the

3 context of arbitration agreements and held that "[a]bsent at least an express provision," the court

4 would not construe an arbitration agreement as contemplating arbitration of "nonwaiveable"

5 statutory rights.  The court further determined that even with an express provision, certain

6 statutory claims may still not be properly arbitrated; "[i]t is up to [a] case-by-case interpretation

7 to determine which statutes are such that an arbitrator can consider the statutory claim."  *Id.* at

8 420.  WSRMP argues that because the Arbitration Clause does not expressly include statutory

9 claims, they are not arbitrable, and that even if the Clause did include such claims, WSRMP's

10 WCPA and IFCA claims still may not be subject to arbitration.  Dkt. 36 at 10.

11      The Court is not persuaded that *Marchese* controls.  Indeed, *Marchese*'s arbitrability

12 analysis is seemingly outdated in light of subsequent Supreme Court case law.  In *Mitsubishi

13 Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), for example, the

14 Supreme Court held that the federal policy in favor of arbitration applies when a party bound by

15 an arbitration agreement "raises claims founded on statutory rights."  *See also Gilmer v.

16 Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims

17 may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Green Tree

18 Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000) ("[W]e have recognized that federal

19 statutory claims can be appropriately resolved through arbitration, and we have enforced

20 agreements to arbitrate that involve such claims.").

21      While the *Mitsubishi* Court recognized that "not all controversies implicating statutory

22 rights are suitable for arbitration[,]" it determined that whether statutory claims are properly

23 arbitrable should be determined by looking to the congressional intention expressed in the statute

AMENDED REPORT AND RECOMMENDATION
- 14

1    at issue. *Mitsubishi Motors Corp.*, 473 U.S. at 627. Per the Court, "[h]aving made the bargain to

2    arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude

3    a waiver of judicial remedies for the statutory rights at issue." *Id.* at 628 (internal citation

4    omitted). *See also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 725 (9th Cir. 2007)

5    ("Contractual arbitration agreements are equally applicable to statutory claims as to other types

6    of common law claims" unless Congress has "evinced an intent to preclude arbitration of

7    claims.").

8        The Court will also invalidate on "public policy" grounds "'arbitration agreements that

9    "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies.'" *Am. Exp.*

10   *Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp.*, 473

11   U.S. at 637 n.19). But so long as "the prospective litigant effectively may vindicate its statutory

12   cause of action in the arbitral forum," then the arbitration agreement is valid. *Id.* at 236 (quoting

13   *Mitsubishi Motors Corp.*, 473 U.S. at 637).

14       Here, WSRMP fails to demonstrate that either the WCPA or IFCA contain provisions

15   indicating an intent to preclude a waiver of judicial remedies, and neither statute intimates such

16   an intention. *See* Chapter § 19.86 RCW; RCW 48.30.015; *see also Mendez v. Palm Harbor*

17   *Homes, Inc.*, 111 Wn. App. 446, 457, 45 P.3d 594 (2002), *as amended* (June 6, 2002) ("The

18   Washington Supreme Court held CPA claims arbitrable under the FAA . . . ."). Even if they did,

19   however, neither statute was enacted by Congress, but instead by the Washington State

20   Legislature, meaning the Convention would seemingly preempt their attempts to preclude

21   arbitration. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (citing *Preston v.*

22   *Ferrer*, 552 U.S. 346, 353 (2008) ("When state law prohibits outright the arbitration of a

23   particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the

1   FAA.")); *CLMS Mgmt. Servs.*, 8 F.4th at 1017–18 (holding that the Convention is not subject to

2   reverse-preemption by operation of the McCarran-Ferguson Act).  Finally, nothing in the

3   Arbitration Clause can be construed as a waiver of either parties' right to effectively pursue

4   statutory remedies in arbitration.  Thus, assuming WSRMP's WCPA and IFCA claims touch the

5   Sompo Policy, they are arbitrable.  *See Mitsubishi Motors Corp.*, 473 U.S. at 624 n.13 (noting

6   that "insofar as the allegations underlying the statutory claims touch matters covered by the

7   enumerated articles, [we] properly resolve[ ] any doubts in favor of arbitrability.").

8           With regards to the WCPA claim, the Amended Complaint alleges (1) "Sompo's acts or

9   omissions constitute unfair and deceptive acts or practices, in trade and commerce, that affect the

10  public interest and that have proximately caused damage to WSRMP[,]" and (2) "Sompo's acts

11  or omissions violate specific unfair claims practices under WAC 284-30, *et seq.* and constitute

12  *per se* violations of the CPA."  Dkt. 27 ¶¶ 58–59.  These allegations pertain to Sompo's handling

13  of WSRMP's reinsurance claim under the Sompo Policy.  They therefore touch the Sompo

14  Policy.

15          Similarly, with regards to the IFCA claim, the Amended Complaint alleges that "Sompo

16  unreasonably denied a claim for coverage . . . ."  Dkt. 27 ¶ 61.  This allegation, which expressly

17  pertains to WSRMP's coverage claim under the Sompo Policy, also touches the Sompo Policy.

18  Thus, both the WCPA and IFCA claims are arbitrable.

19          D.      Choice of Law

20          WSRMP moves the Court for an order holding that the choice of law provision in the

21  Sompo Policy, which provides that New York law governs, is void under RCW 48.18.200(1)(a),

22  which precludes any "insurance contract delivered or issued for delivery in this state and

23  covering subjects located, resident, or to be performed in this state" from containing any

AMENDED REPORT AND RECOMMENDATION
- 16

provision "requiring [the contract] to be construed according to the laws of any other state or country . . . ." Dkt. 14 at 8–10.  Sompo, on the other hand, argues that any question as to what law governs the arbitration proceedings is not ripe and should be decided by the arbitrators.  Dkt. 38 at 12–13.  The Court agrees.

"In deciding a motion to compel arbitration under the Convention Act, a court conducts 'a very limited inquiry.'" *Bautista*, 396 F.3d at 1294.  "At this interlocutory stage it is not established what law the arbitrators will apply to petitioner's claims . . . ." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995).  Instead, "when parties agree to submit disputes to arbitration, it is presumed that the arbitrator is authorized to determine all issues of law and fact necessary to resolve the dispute." *ATSA of Calif., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th Cir. 1983), *amended*, 754 F.2d 1394 (9th Cir. 1985).  Accordingly, the issue of what law applies in the arbitration proceeding—including whether the Sompo Policy's choice of law clause governs—is for the arbitrators to decide.  *Vimar Seguros y Reaseguros, S.A.*, 515 U.S. at 540–41 (recognizing that the circuit court "was correct to reserve judgment on the choice-of-law question, as it must be decided in the first instance by the arbitrator.") (internal citations omitted); *ATSA of Calif., Inc.*, 702 F.2d at 175; *Zurich Ins. Co. v. Ennia Gen. Ins. Co.*, 882 F. Supp. 1438, 1440 (S.D.N.Y. 1995).

        E.    Stay or Dismissal of WSRMP's Claims

        WSRMP asks the Court to stay its claims pending the outcome of arbitration so that it can raise its Article V public policy arguments in this venue, but offers no authority or argument in support of its request.  *See* Dkt. 36 at 9.  Sompo argues that enforcement of the Arbitration Clause should result in outright dismissal of WSRMP's claims under Federal Rule of Civil Procedure 12(b)(3) ("improper venue").  The Court has discretion to grant either relief.  *See*

1  *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1242, 1261 (S.D. Cal.

2  2000); *Tennessee Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1323–25 (M.D. Tenn. 1990);

3  Restatement (Third) of Foreign Relations Law § 487 (1987).

4        Sompo contends that WSRMP's request for a stay is meritless because only Bermuda

5  courts (the country where arbitration will occur) and New York courts (the state whose

6  procedural law governs the Sompo Policy) can hear challenges to the arbitration award.  Dkt. 38

7  at 8 (citing *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 849 (6th Cir. 1996)

8  ("We hold . . . that such a motion to vacate may be heard only in the courts of the country where

9  the arbitration occurred or in the courts of any country whose procedural law was specifically

10  invoked in the contract calling for arbitration of contractual disputes.")).

11        The Court will not decide the issue on this ground.  While the Convention and FAA

12  provide procedures for parties to seek court assistance in setting aside arbitral awards which

13  clearly violate public policy, *see* 9 U.S.C. § 207; Convention, Arts. III, V, the Court "need not

14  and should not automatically anticipate the need for future judicial involvement." *Tennessee*

15  *Imports, Inc.*, 745 F. Supp. at 1324–25 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 637) ("There

16  is no reason to assume at the outset of the dispute that international arbitration will not provide

17  an adequate mechanism.")).

18        Because all of WSRMP's claims against Sompo are arbitrable, dismissal is appropriate.

19  *See Sparling v. Hoffman Constr.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that the trial court

20  did not err in dismissing the case because plaintiff was required to submit all claims to

21  arbitration); *see also Sharma v. Subway Real Est., LLC*, 793 F. App'x 584 (9th Cir. 2020)

22  (recognizing that district courts may dismiss an action when the plaintiff is required to submit all

23  claims to arbitration); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–04 (9th

Cir. 2014) (same); *In re Wyze Data Incident Litigation*, No. C20-0282-JCC, 2020 WL 6202724, at *4 (W.D. Wash. Oct. 22, 2020) (same).  WSRMP's claims against Sompo should be DISMISSED.

      F.     <u>Sompo's Request for Attorneys' Fees</u>

      Sompo moves the Court for an order granting it its fees and costs.  Dkt. 32 at 4; Dkt. 38 at 6 n.3.  Sompo argues only that "sanctions in the form of attorney's fees" are justified because WSRMP reiterated its public policy arguments in response to Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims, even though Sompo's Reply in support of its first Motion to Compel Arbitration explained that Article V defenses cannot be invoked absent an arbitration award.  Dkt. 38 at 6 n.3.

      The Court will not order sanctions on this ground alone.  Given the fact that (1) the Ninth Circuit issued its decision in *CLMS Mgmt. Servs.*, and (2) the Supreme Court declined review of that decision after WSRMP filed this lawsuit and brought its Motion for Partial Summary Judgment, fees are not warranted.  Sompo's request for attorneys' fees and costs is DENIED.

IV.     <u>CONCLUSION</u>

      For the foregoing reasons, Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Amended Claims, Dkt. 32, should be GRANTED and WSRMP's Motion for Partial Summary Judgment Re Arbitration and Choice of Law Provisions in Reinsurance, Dkt. 14, should be DENIED.  Sompo's Motion to Compel Arbitration and Dismiss WSRMP's Claims, Dkt. 21, should be DENIED as moot.  Sompo's request for attorneys' fees and costs is DENIED.

V.     <u>OBJECTIONS</u>

      Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 6, 2022**.

Dated this 20th day of April, 2022.


S. KATE VAUGHAN
United States Magistrate Judge