UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WASHINGTON SCHOOLS RISK MANAGEMENT POOL,

Plaintiff,

v.

AMERICAN RE-INSURANCE COMPANY and SOMPO INTERNATIONAL REINSURANCE,

Defendants.

CASE NO. 21-CV-00874-LK

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

This matter comes before the Court on Plaintiff Washington Schools Risk Management Pool's Motion for Leave to File Second Amended Complaint, Dkt. No. 61, and Defendant American Re-Insurance Company's Motion for Judgment on the Pleadings, Dkt. No. 66.[1] The first motion is granted. The second will be denied as moot.

[1] In September 2006, American Re-Insurance Company rebranded itself as Munich Reinsurance America, Inc. *See American Re to Become Munich Re America Starting in Sept.*, Insurance Journal, https://www.insurancejournal.com/news/national/2006/08/03/71076.htm (last visited June 26, 2023). Defendant accordingly refers to itself as "Munich Reinsurance America" or "MRAm" throughout its briefing. The Court nonetheless refers to Defendant as "American Re-Insurance" in this Order for the sake of continuity and consistency with the case caption and its previous orders. *See* Dkt. Nos. 49, 55.

## I. BACKGROUND

Washington Schools Risk Management Pool ("Washington Schools") is an interlocal cooperative whose membership includes several school districts, educational service districts, and other public school interlocal cooperatives. Dkt. No. 27 at 1. It exists "for the purpose of jointly self-insuring risks, jointly purchasing insurance or reinsurance, . . . contracting for joint risk management, [and maintaining] claims and administrative services for the benefit of itself and its member schools." *Id.* at 4. In accordance with this purpose, Washington Schools issued three Coverage Agreements to the Puyallup School District (the "District"). *Id.* at 4–7. The first agreement was effective from September 1, 2003 to August 31, 2004 (the "2003-2004 Coverage Agreement"). *Id.* at 4. The second agreement was effective from September 1, 2004 to September 1, 2005 (the "2004-2005 Coverage Agreement"). *Id.* And the third agreement was effective from September 1, 2005 to September 1, 2006 (the "2005-2006 Coverage Agreement"). Dkt. No. 62 at 8.

<u>The Coverage Agreements and Reinsurance Treaties</u>

At issue here is the "Errors and Omissions Liability Coverage" under the 2004-2005 and 2005-2006 Coverage Agreements. Both policies promise that Washington Schools will indemnify the District for the following damages:

> Subject to all applicable limits of liability, deductibles, retentions, terms, conditions, and exclusions, the Pool will pay those damages which the District shall become legally obligated to pay as a result of wrongful acts as defined herein, occurring during the term of this Agreement. The Pool will have the right and duty to defend the District against any suit seeking damages as set forth herein. This coverage includes payment of damages which the District shall become legally obligated to pay as a result of wrongful acts arising out of sexual abuse by any District employees or volunteers.

Dkt. No. 62 at 9; Dkt. No. 63 at 5; Dkt. No. 64-1 at 43.[2]

[2] The terms "Sexual Abuse" and "Wrongful Act" are defined in the Coverage Agreements. Dkt. No. 62 at 9; Dkt. No.

The Coverage Agreements also limit Washington Schools' liability in several respects. When, for example, a "wrongful act" spans multiple policy periods, "only the coverage and limits in the last [policy period] in time shall apply and only one wrongful act limit shall be available for each such multi-period . . . wrongful act." Dkt. No. 64-1 at 44. And claims "based on or arising out of sexual abuse by an employee" are "considered as arising out of one wrongful act and shall be deemed to have been committed at the time of the last of such acts or alleged acts[.]" *Id.* at 45. This is so regardless of the number of persons sexually abused, the number of locations where the sexual abuse occurred, the number of acts of sexual abuse, and the period of time over which the sexual abuse occurred. *Id.* ("If a series of related wrongful acts . . . takes place over more than one [policy period], the wrongful acts shall be deemed to have been committed during the last [policy period], only the coverage and limits of that Agreement will apply, and only one wrongful act limit shall be available.").

Washington Schools obtained three reinsurance policies to cover losses exceeding its self-insured limits under the Coverage Agreements with the District. Dkt. No. 27 at 7–8.[3] Defendant Sompo International Reinsurance issued the first policy, which covered excess losses between January 1, 2003 and August 31, 2004 (the "2003-2004 Sompo Treaty"). Dkt. No. 27 at 8. American Re-Insurance issued the second and third policies. The second spanned September 1, 2004 to September 1, 2005 (the "2004-2005 American Re-Insurance Treaty"), while the third spanned September 1, 2005 to September 1, 2006 (the "2005-2006 American Re-Insurance Treaty"). *Id.*; Dkt. No. 62 at 13. The precise terms of the reinsurance policies are not important for today's

63 at 6; Dkt. No. 64-1 at 50.

[3] "Reinsurance" refers to the relationship that exists when an insurance company (the reinsurer) agrees to indemnify another insurance company (the insurer) against a portion of the losses that the insurer might incur in connection with an underlying policy. *Olsen v. United States ex rel. United States Dep't of Agric.*, 546 F. Supp. 2d 1122, 1127 (E.D. Wash. 2008). As American Re-Insurance succinctly puts it, "[r]einsurance is essentially insurance for insurers." Dkt. No. 63 at 3.

purposes. What matters is that Sompo agreed to indemnify Washington Schools for losses paid to the District under the 2003-2004 Coverage Agreement, and American Re-Insurance agreed to indemnify Washington Schools for losses paid to the District under the 2004-2005 and 2005-2006 Coverage Agreements. *See* Dkt. No. 27 at 8 (first amended complaint reproducing scope of coverage under Sompo policy); Dkt. No. 64-2 at 4, 27 (scope of coverage under American Re-Insurance policies).

The Underlying Sexual Abuse Lawsuits

Between 2005 and 2020, three students sued the District and former teacher Timothy Paulsen in state court for alleged sexual abuse and other misconduct stretching back to the early 1990s. Dkt. No. 27 at 2–4. These three lawsuits—referred to by the parties as the "R.G. Suit," "R.B. Suit," and "J.B. et al. Suit"—resulted in settlements and defense costs totaling approximately $10 million. *Id.* at 4; Dkt. No. 80 at 18. Although Washington Schools footed the bill pursuant to its Coverage Agreements with the District, the expenses associated with the lawsuits exceeded the self-insured limits in those agreements. Dkt. No. 27 at 7, 9. It accordingly turned to Sompo and American Re-Insurance for reimbursement.

Washington Schools Pursues Sompo

Washington Schools "provided relevant documents regarding its payment of defense, judgment, and settlement of claims . . . to both Sompo and American Re[-Insurance]," but initially asked only Sompo to reimburse its excess losses pursuant to the 2003-2004 Sompo Treaty. *Id.* at 9; Dkt. No. 62 at 2 (detailing submission of claim to Sompo); Dkt. No. 79 at 4 ("[T]he only allegations of breach were against Sompo[] because at that time [Washington Schools] had not requested reimbursement from American Re[-Insurance]."). Sompo denied coverage. Dkt. No. 27 at 9. It also demanded arbitration pursuant to the mandatory arbitration provision in its reinsurance policy—the validity of which the parties disputed. *Id.*

Washington Schools eventually sued Sompo and American Re-Insurance. Dkt. No. 1-1. Its first amended complaint advances six causes of action (four of which are against only Sompo) targeting Sompo's denial of coverage and the (allegedly void) arbitration provision. Dkt. No. 27 at 9–13. As relevant here, the first amended complaint claims that "[t]he alleged abuse described in the Underlying Lawsuits spanned from 1991 to 2004, with the last instance of abuse allegedly occurring no later than January 28, 2004." *Id.* at 4. The Court need not recount the entire procedural history of this case—a lengthy story that involves referral of several motions to United States Magistrate Judge S. Kate Vaughan. *See* Dkt. Nos. 14, 21, 32, 37, 48–49; Mar. 22, 2022 Minute Entry. Suffice it to say that the Court granted Sompo's motion to compel arbitration, dismissed all claims against Sompo, and stayed the remaining non-arbitrable claims against American Re-Insurance pending the outcome of arbitration between Washington Schools and Sompo. Dkt. No. 55 at 10–13.

<u>Washington Schools Turns to American Re-Insurance</u>

Arbitration concluded in February 2023. Dkt. No. 62 at 2.[4] Washington Schools and American Re-Insurance thereafter filed a joint status report advising the Court of this development and indicating that Washington Schools intended to move for leave to file a second amended complaint. Dkt. No. 57 at 1; *see also* Dkt. No. 58 (full joint status report). That motion is now before the Court. Dkt. No. 61.

Washington Schools' proposed second amended complaint eliminates all references to, allegations about, and claims related to Sompo; adds facts regarding the 2005-2006 Coverage Agreement and 2005-2006 American Re-Insurance Treaty; and advances declaratory judgment and breach of contract claims against American Re-Insurance. *See* Dkt. No. 62 at 4–18. Both

[4] The outcome of the arbitration is confidential. *Id.*

claims are premised on American Re-Insurance's alleged wrongful denial of coverage under its reinsurance policies. *Id.* at 14–16.[5] Key for purposes of Washington Schools' motion is the addition of the following factual allegations:

> 3.5 The complaint in the R.G. Suit also alleged that R.G. had been the target of retaliatory comments from other students who supported Paulsen, and that the District negligently failed to prevent and/or react appropriately to stop retaliation against R.G. by other students.
>
> 3.6 In or around September 2004, R.G. was attending a basketball game at his high school when he was allegedly harassed by students from his former school for his reporting of Pauls[e]n's behavior toward R.G.
>
> 3.7 In or around November 2005, Paulsen allegedly visited the high school R.G. was attending.
>
> 3.8 In or around December 1, 2005, R.G. was allegedly harassed by other students who supported Paulsen while he was at a local shopping mall.

Dkt. No. 62 at 6–7. This time, Washington Schools claims that the alleged sexual abuse described in the underlying lawsuits spanned from 1991 to 2004, "with the last *act of retaliation* arising out of such abuse taking place on or around December 1, 2005." *Id.* at 8 (emphasis added).

American Re-Insurance opposes the motion to amend. Dkt. No. 63. It has also filed a Rule 12(c) motion for judgment on the pleadings asking the Court to dismiss Washington Schools' first amended complaint with prejudice. Dkt. No. 66 at 1, 3.

## II. DISCUSSION

The Court first explains why it will permit Washington Schools to file its proposed second amended complaint. It then dispenses with American Re-Insurance's motion for judgment on the pleadings.

[5] Washington Schools tendered notice of its claim for reimbursement under the 2004-2005 American Re-Insurance Treaty in August 2020. Dkt. No. 65 at 2. It submitted a claim under the 2005-2006 American Re-Insurance Treaty on April 7, 2023, and on April 19, 2023, American Re-Insurance "refused to reimburse" payments to the District. Dkt. No. 62 at 13.

**A. Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). This is because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A district court should therefore deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (cleaned up). Evaluation of these factors "should be performed with all inferences in favor of granting the motion [to amend]." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). The party opposing amendment bears the burden of showing that amendment is not warranted. *Hedglin v. Swift Transp. Co. of Ariz.*, No. C16-5127-BHS, 2016 WL 8738685, at *1 (W.D. Wash. Nov. 15, 2016).

Importantly, the amendment factors are not entitled to equal weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). The Ninth Circuit has repeatedly emphasized that prejudice "carries the greatest weight" and is "the touchstone of the inquiry under [R]ule 15(a)." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Indeed, there is a presumption in favor of amendment absent prejudice or a "strong showing" under the remaining four factors. *Eminence Capital*, 316 F.3d at 1052. Furthermore, undue delay alone does not justify denial of leave to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999); *see also United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) ("Undue delay by itself is insufficient to

justify denying leave to amend[.]").

American Re-Insurance opposes amendment on only two grounds: undue delay and futility. Dkt. No. 63 at 9–11. The Court nonetheless evaluates all five of the amendment factors.

1. Undue Delay

The first factor counsels against amendment. Delay is "undue" when it prejudices the opposing party or imposes unwarranted burdens on the district court. *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015). The dispositive inquiry is not whether the motion to amend complies with the current scheduling order. *AmerisourceBergen Corp.*, 465 F.3d at 953. Rather, the district court must determine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *see Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (late amendments asserting new theories "are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). "Whether there has been 'undue delay' should be considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to trial date." *Wizards of the Coast*, 309 F.R.D. at 652 (citing *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991)).

American Re-Insurance contends that Washington Schools knew or reasonably should have known each "new" fact asserted in its proposed second amended complaint "well before it filed the original [c]omplaint." Dkt. No. 63 at 10. According to American Re-Insurance, Washington Schools' "attempt to add these long-known facts" in a second amended complaint reeks of gamesmanship. *Id.* The Court agrees—at least with the premise of this argument.

With respect to the length of delay, the first subfactor, the District settled the R.G. Suit in

December 2006. *Id.* That means Washington Schools was privy to and therefore knew or reasonably should have known about the "new" R.G. retaliation allegations for the better part of two decades when it moved to assert them for the first time in May 2023. Indeed, Washington Schools concedes that it possessed the facts at issue since at least October 2020, when it "delivered to American Re[-Insurance] voluminous documentation in connection with th[e underlying] lawsuits, including the deposition of the plaintiff in the first lawsuit, Pierce County Superior Court, Case No. 05-2-09050-8 ('R.G. Suit')[,] that *included the specific factual allegations in* [*Washington Schools'*] *proposed second amended complaint*." Dkt. No. 79 at 4 (emphasis added). Even assuming Washington Schools first learned of the relevant facts when it disclosed the R.G. deposition to American Re-Insurance (a highly improbable assumption), the 30-month delay between its acquisition of those facts and its motion for leave to file a second amended complaint is unreasonable. *See, e.g.*, *AmerisourceBergen Corp.*, 465 F.3d at 953 (15-month delay between obtaining fact and seeking leave to amend was unreasonable); *Texaco*, 939 F.2d at 798–99 (eight-month delay between obtaining fact and seeking leave to amend was unreasonable).

Washington Schools protests that it omitted the R.G. allegations from its first two complaints because it had not yet submitted—and American Re-Insurance had not yet denied—its claim for reimbursement under the 2005-2006 American Re-Insurance Treaty. Dkt. No. 79 at 4.[6] There are two issues with this counterargument. First, it misconstrues the relevant inquiry. A party cannot render old facts "new" for purposes of the delay analysis by asserting a new claim that relies on those facts. Undue delay turns on the amount of time between the moving party's

[6] Although Washington Schools broadly claims that it "had not requested reimbursement from American Re-[Insurance]" prior to April 2023, *id.*, the Court construes Washington Schools' contention as referring specifically to reimbursement under the 2005-2006 American Re-Insurance Treaty. As noted above, the record establishes that in August 2020, Washington Schools submitted a claim for reimbursement under the 2004-2005 American Re-Insurance Treaty. Dkt. No. 65 at 2.

acquisition of the relevant facts and its assertion of those facts, not why the moving party elected to omit previously known facts. Second, Washington Schools' explanation attempts to rescue the strategy at the heart of its delay: the decision to pursue Sompo before American Re-Insurance. But this (perhaps misguided) strategy does not negate the lengthy delay here.

The first *Wizards of the Coast* subfactor therefore weighs heavily in favor of finding undue delay. The second two subfactors, however, lean the other way. Discovery has not closed—indeed, it has not even opened—and there is no case schedule or trial date. The Court nonetheless concludes that the egregious delay in this case offsets these latter two sub-considerations. On balance, the undue delay factor weighs against amendment.

2. Bad Faith

Not so with respect to the second factor. A plaintiff acts in bad faith when it seeks to amend its complaint to "prolong the litigation by adding new but baseless legal theories," *Griggs*, 170 F.3d at 881, or when it intends "to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast*, 309 F.R.D. at 651; *see also Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) ("Bad faith includes seeking to amend a complaint for an improper purpose[.]"). A finding of bad faith requires more than bad judgment or negligence; rather, there must be evidence of conscious wrongdoing in furtherance of a dishonest purpose, furtive motive, or ill will. *Wizards of the Coast*, 309 F.R.D. at 651 (citing *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1185 (9th Cir. 2003)). American Re-Insurance does not argue or otherwise show that Washington Schools seeks to amend its complaint in furtherance of an improper purpose such as harassment, deception, or disruption. Nor does the record contain any evidence that Washington Schools seeks to needlessly prolong this litigation.

True enough, Washington Schools' strategy may bear some circumstantial indicia of gamesmanship given its post-arbitration efforts to collect reimbursement under a new reinsurance

policy. And the Court concedes that there is some basis to infer bad faith whenever a plaintiff comes forth with "new" facts after having sat on them for so long. *See Diederich v. Providence Health & Servs.-Wash.*, No. CV-10-1558-RAJ, 2016 WL 9241273, at *1 (W.D. Wash. Oct. 26, 2016) (expressing skepticism that plaintiff brought forth "new" facts in good faith on the eve of trial when he was in possession of those facts well before filing his motion to amend). However, Washington Schools' rationale for seeking the prior stay in this case was that "[t]he Arbitration Panel's ruling may resolve the entire matter[.]" Dkt. No. 50 at 2. It emphasized that Sompo's arbitration demand "to the exclusion of American Re[-Insurance]" put Washington Schools "in a vulnerable position, forcing [it] to adjudicate its rights under the Sompo Reinsurance separate from its rights under the American Re[-Insurance] Reinsurance[.]" *Id.* And American Re-Insurance supported the stay. Dkt. No. 51 at 4. Again, bad faith "requires proof of bad intent or improper purpose," *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021), and this is a "high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Washington Schools' efforts to obtain reimbursement from an alternative source—one that it has named as a defendant since the inception of this suit—does not meet that threshold. The second factor accordingly favors amendment.

3. Prejudice

So does the third. "Prejudice" in this context means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the [moving] party." *Wizards of the Coast*, 309 F.R.D. at 652 (cleaned up). The party opposing amendment "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendment[] been timely." *Id.* (cleaned up). This American Re-Insurance cannot do.

As noted above, this case is in its infancy. There is no scheduling order and the parties have

not engaged in any discovery. Although Washington Schools intends to pursue a new theory of recovery, American Re-Insurance will have a full opportunity to conduct discovery tailored to that theory, research and draft dispositive motions on that theory, and, if necessary, develop a trial strategy that addresses that theory. Courts typically find prejudice when a party seeks to amend its complaint much later in the litigation. For example, an amendment may prejudice the defendant when it requires the district court to reopen discovery, or it results in a trial delay or new case schedule. *Compare Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (a need to reopen discovery and delay the proceedings supports a finding of prejudice), *Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988) (party was substantially prejudiced because it would have been forced to conduct more discovery and "reprepare its case for trial on an entirely different factual theory of liability"), *and Lochridge v. City of Tacoma*, 315 F.R.D. 596, 600 (W.D. Wash. 2014) (finding prejudice where amendment would have required additional fact discovery and a new case schedule, including a delayed trial date), *with DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187–88 (9th Cir. 1987) (leave to amend did not prejudice opposing party because case was "still at the discovery stage with no trial date pending").

As with bad faith, American Re-Insurance does not present any argument for this factor. Nor does the Court's independent review yield any indication that it will suffer prejudice. Washington Schools' undue delay alone is insufficient to establish prejudice. *Wizards of the Coast*, 309 F.R.D. at 652. And the "ordinary burdens" of defending a lawsuit, such as time and expense, likewise do not suffice. *Id.* at 653. The prejudice factor—the weightiest and most important of the considerations—therefore favors amendment.

4. Previous Amendments

The Court reaches the same conclusion with respect to the fourth factor. This is not a case in which the plaintiff has repeatedly failed to cure pleading deficiencies in its complaint. Rather,

Washington Schools amended its complaint once as a matter of course after American Re-Insurance filed an answer. Dkt. Nos. 19, 27; *see, e.g.*, *Wizards of the Coast*, 309 F.R.D. at 654 (granting leave to amend where plaintiff had amended only once as of right in response to a motion to dismiss). And its latest proposed amendment is unrelated to its first amendment, which added claims for bad faith and violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act. *Compare* Dkt. No. 1-1 at 9–12, *with* Dkt. No. 27 at 9–13; *see Pizana v. SanMedica Int'l LLC*, __ F.R.D. __, No. 1:18-CV-00644-DAD-SKO, 2022 WL 1241098, at *10 (E.D. Cal. Apr. 27, 2022) (factor did not weigh against granting leave to amend where plaintiff's proposed amendments were unrelated to two previous amendments, and there was "no history of repeated failures to cure pleading deficiencies"). This factor weighs in favor of granting leave to amend.

5. Futility

The fifth and final factor similarly suggests that amendment is proper. Denial of leave to amend due to futility is "rare," and district courts ordinarily "defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *United States Fire Ins. Co. v. Icicle Seafoods, Inc.*, No. C20-00401-RSM, 2021 WL 5038783, at *2 (W.D. Wash. Oct. 29, 2021) (internal quotation marks omitted) (quoting *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)). Indeed, leave to amend should be denied only if it is "beyond doubt" that the proposed amended complaint would be subject to dismissal for failure to state a claim. *DCD Programs*, 833 F.2d at 188; *accord Taylor v. Alore, LLC*, No. C19-5086-BHS, 2019 WL 4058980, at *2 (W.D. Wash. Aug. 27, 2019).

That is not the case here. Although the Court disregards most of American Re-Insurance's opposition brief, *see* Dkt. No. 78,[7] it is apparent that the parties' substantive dispute entails

[7] The Court notes that even if it considered American Re-Insurance's overlength opposition brief in its entirety, it would reach the same result.

potentially complex issues of policy interpretation. This includes, but may not be limited to, whether the District's alleged failure to properly respond to student retaliation constitutes a "wrongful act" under the 2004-2005 and 2005-2006 Coverage Agreements; the interplay between a "wrongful act" and instance of "sexual abuse" under those policies; and application of the policies' limitation provision for purposes of allocating reimbursement liability under the 2004-2005 and 2005-2006 American Re-Insurance Treaties. Dkt. No. 63 at 11–21; Dkt. No. 79 at 5; *see also* Dkt. No. 66 at 7–15; Dkt. No. 81 at 8–10 (motion for judgment on pleadings briefing). The Court declines to resolve these issues on a motion to amend. *See, e.g.*, *Taylor*, 2019 WL 4058980, at *2 ("[Plaintiff] presents arguments on futility which are more appropriate to a fully-briefed motion to dismiss than to opposition to a motion for leave to amend."). At this stage, it is not "beyond doubt" that Washington Schools' proposed second amended complaint fails to state a claim. *DCD Programs*, 833 F.2d at 188; *see also, e.g.*, *Kische USA LLC v. Simsek*, No. C16-0168-JLR, 2017 WL 698790, at *5 (W.D. Wash. Feb. 22, 2017) ("Based on the record before it, the court cannot conclude that allowing [plaintiff] to amend its complaint in this manner would be futile.").[8]

6. Summary

The Court concludes that leave to amend is appropriate under Rule 15(a)'s extremely liberal standard. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Four of the five factors counsel in favor of amendment, including the most important one: prejudice. Washington Schools' motion for leave to amend is accordingly granted.

---

[8] The Court also notes that the new factual allegations are not inconsistent with the original or amended complaint. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (amendment is warranted if the additional allegations are consistent with and do not contradict the allegations in the original complaint). They specify that the last *act of retaliation* arising out of the sexual abuse occurred around December 1, 2005. Dkt. No. 62 at 8. Nothing about this contradicts Washington Schools' previous allegation: that the last instance of sexual abuse occurred no later than January 28, 2004. Dkt. No. 1-1 at 4; Dkt. No. 27 at 4.

**B. Motion for Judgment on the Pleadings**

American Re-Insurance's motion for judgment on the pleadings will be denied as moot because the second amended complaint supersedes the first amended complaint, and American Re-Insurance's motion targets the first amended complaint. Dkt. No. 66 at 1; *see Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).[9]

## II. CONCLUSION

The Court GRANTS Washington Schools' Motion for Leave to File Second Amended Complaint, Dkt. No. 61, and will DENY as moot American Re-Insurance's Motion for Judgment on the Pleadings, Dkt. No. 66, if Washington Schools files its proposed second amended complaint within seven days of the date of this Order. American Re-Insurance may renew its motion for judgment on the pleadings after the second amended complaint is filed.

Dated this 8th day of August, 2023.

Lauren King
United States District Judge

[9] To the extent American Re-Insurance intends for its motion to apply to the second amended complaint, the motion is denied without prejudice as premature. *See* Fed. R. Civ. P. 12(c) (A party may move for judgment on the pleadings only "[a]fter the pleadings are closed[.]"). However, it is apparent that American Re-Insurance does not so intend, because it characterized its opposition to Washington Schools' Motion for Leave to File a Second Amended Complaint as "essentially a motion to dismiss the proposed Second Amended Complaint." Dkt. No. 76 at 3.