UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON SCHOOLS RISK MANAGEMENT POOL,<br><br>                    Plaintiff,<br><br>    v.<br><br>AMERICAN RE-INSURANCE COMPANY,<br><br>                    Defendant. | CASE NO. 2:21-cv-00874-LK<br><br>ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS |

This matter comes before the Court the parties' cross-motions for judgment on the pleadings. Dkt. Nos. 88, 89.[1] The Court denies both motions.

---

[1] Plaintiff Washington Schools Risk Management Pool ("WSRMP") initially filed its motion as a cross-motion for summary judgment. Dkt. No. 89 at 1–2, 14–18. After Defendant Munich Reinsurance America, Inc.'s opposition pointed out that the parties' joint proposed briefing schedule and the Court's related order anticipated only motions for judgment on the pleadings, Dkt. No. 92 at 2, WSRMP requested in its reply that the Court construe its motion as a motion for judgment on the pleadings, Dkt. No. 93 at 1. There are numerous problems with this.

First, the legal standards are different, and Munich's response to WSRMP's motion addressed only the summary judgment standard. Dkt. No. 92 at 2–3. Second, WSRMP appears to misapprehend the nature of a motion for judgment on the pleadings. The Court cannot grant a plaintiff's motion for judgment on the pleadings unless all of the defenses raised in the defendant's answer are legally insufficient. Fed. R. Civ. P. 12(c); *see also Red Lion Hotels Franchising, Inc. v. First Cap. Real Est. Invs., LLC*, No. 2:17-CV-145-RMP, 2018 WL 2324439, at *1 (E.D. Wash. May 22, 2018). Notably, the "fair notice" required by the pleading standards only requires a defendant to describe a

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 1

# I. BACKGROUND

## A. The Underlying Lawsuits

WSRMP is a Washington interlocal cooperative based in Tukwila, Washington. Dkt. No. 84 at 1–2. Formed under Chapters 48.62 and 39.34 of the Revised Code of Washington, its members include various school districts, educational service districts, and other public school interlocal cooperatives in the state of Washington. *Id.* at 1. WSRMP allows members to jointly self-insure against risks, jointly purchase insurance or reinsurance, and contract for joint risk management, claims, and administrative services. *Id.* at 5.

One of WSRMP's member school districts is the Puyallup School District (the "District"). *Id.* at 2. On June 1, 2004, the parents of student R.G. complained to the District about conduct committed by Timothy Paulsen, a teacher employed by the District. *Id.* at 2. The District placed Paulsen on administrative leave the same day, where he remained until he resigned on February 28, 2005. *Id.* R.G.'s parents presented a Standard Tort Claim Form to the District in March 2005, in which they alleged that the last incident of Paulsen's inappropriate conduct occurred in June 2004. *Id.* at 3. In June 2005, R.G.'s parents filed suit on behalf of R.G. against Paulsen and the District in Pierce County Superior Court (the "R.G. Suit"). *Id*. The complaint alleged that when R.G. was a student at Kalles Junior High School from September 2001 to June 2004, Paulsen cultivated an inappropriate relationship with R.G. that included "contact that would have led to sexual abuse." *Id*. R.G.'s parents also alleged that Paulsen's actions were "fostered within the

---

defense in "general terms." *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015); *see also Jou v. Adalian*, No. CV 15-00155 JMS-KJM, 2017 WL 3624340, at *3 (D. Haw. Aug. 23, 2017). Here, to the extent WSRMP seeks to attack Munich's affirmative defenses, it does not frame its motion or reply in this fashion; instead, it seeks to *establish* its entitlement to relief under its own claims as a matter of law. *See generally* Dkt. Nos. 89, 93.

This misstep underscores the importance of meaningfully meeting and conferring prior to filing dispositive motions. Because the briefing related to WSRMP's motion does not address the appropriate standard and WSRMP never identifies the affirmative defenses on which it seeks judgment, the Court denies WSRMP's motion.

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 2

scope of Paulsen's duties" as an employee of the District, and the District "negligently hired, supervised and retained" Paulsen and "did not take reasonable steps to control [his] conduct." *Id.*

R.G.'s parents also alleged that R.G. was the target of retaliatory comments from other students who allegedly "supported" Paulsen, and that the District negligently failed to prevent such retaliation. *Id.* Specifically—as stated in WSRMP's Second Amended Complaint—"[i]n or around September 2004, R.G. was attending a basketball game at his high school when he was allegedly harassed by students from his former school for his reporting of Paulson's behavior toward R.G.," and "in or around December 1, 2005, R.G. was allegedly harassed by other students who supported Paulsen while he was at a local shopping mall." *Id.* at 3–4. In or around November 2005 (roughly eight months after he resigned from the District), Paulsen also allegedly visited the high school that R.G. was attending. *Id.* at 4.

The R.G. Suit was settled in December 2006 for $110,000 and dismissed with prejudice in January 2007. *Id.* Paulsen's conduct spawned two additional lawsuits against the District related to his alleged sexual abuse of students: the "R.B. Suit" and the "J.B. Suit" (together with the R.G. Suit, the "Underlying Lawsuits"). *Id.* Both suits also settled and were subsequently dismissed. *Id.* at 5. According to WSRMP's Second Amended Complaint, the alleged abuse described in the Underlying Lawsuits spanned from 1991 to 2004, "with the last act of retaliation arising out of such abuse taking place on or around December 1, 2005." *Id.* at 4.

**B.   WSRMP Coverage Agreements**

At all relevant times, the District was a member of WSRMP. *Id.* The District and WSRMP entered into a series of coverage agreements, including for the 2004–05 coverage year from September 1, 2004 to September 1, 2005 ("2004–05 Coverage Agreement") and the 2005–06 coverage year from September 1, 2005 to September 1, 2006 ("2005–06 Coverage Agreement") (together, the "Coverage Agreements"). *Id.*; *see also* Dkt. No. 94 at 126–47, 149–67.

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 3

Both Coverage Agreements include an Errors and Omissions Liability Coverage provision, which states as follows:

> Coverage
>
> Subject to all applicable limits of liability, deductibles, retentions, terms, conditions and exclusions, [WSRMP] will pay those damages which the District shall become legally obligated to pay as a result of wrongful acts as defined herein, occurring during the term of this Agreement. [WSRMP] will have the right and duty to defend the District against any suit seeking damages as set forth herein. This coverage includes payment of damages which the District shall become legally obligated to pay as a result of wrongful acts arising out of sexual abuse by any District employees or volunteers.

Dkt. No. 84 at 5–6; *see also* Dkt. No. 94 at 131, 154. Both Coverage Agreements define "wrongful act" as follows:

> "WRONGFUL ACT" means any actual or alleged error, misstatement, misleading act or statement, or any omission committed solely in the course of performance of duties for the District. The term "wrongful act" includes a series of related acts giving rise to a suit, claim, or damages. The term "Wrongful Act" does not include a wrongful employment practice or series of related wrongful employment practices as those terms are defined in Article V.

Dkt. No. 84 at 6; *see also* Dkt. No. 94 at 138–139, 160. Both Coverage Agreements also define "sexual abuse" as follows:

> "SEXUAL ABUSE" means any actual, attempted or alleged criminal sexual touching, contact, or display of the body of or to a person by another person, or persons acting in concert, which causes physical and/or mental injuries. Sexual abuse includes: sexual molestation, sexual assault, sexual exploitation or sexual injury. Sexual abuse does not include sexual harassment as defined in Article V.

Dkt. No. 84 at 6; *see also* Dkt. No. 94 at 138, 160. Both Agreements also include a "Defense, Settlement, [and] Supplementary Payments" provision:

> Defense, Settlement, Supplementary Payments
>
> In the event of suit against the District alleging liability covered by Article IV of this Agreement, [WSRMP] shall . . . pay all expenses incurred by [WSRMP], all costs other than attorneys' fees or costs incurred by an adverse party in a claim or suit covered hereunder which may be taxed against the District in any such suit and all interest accrued after the entry of judgment, which expenses, costs and interest shall be included in and shall not expand the limits of liability[.]

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 4

Dkt. No. 84 at 6; *see also* Dkt. No. 94 at 131, 154. Section C of the Errors and Omissions Liability Coverage of both Coverage Agreements sets forth the limits applicable to each "wrongful act":

> <u>Limits of Liability</u>
>
> The limit of liability for each wrongful act is the most [WSRMP] will pay for all claims that result from a single wrongful act or from a series of related wrongful acts. Any claims, suits, or damages incurred because of a series of related wrongful acts shall be subject to the limits for a single wrongful act.
>
> In the event a wrongful act begins in one [WSRMP] period of Agreement and ends in another, only the coverage and limits in the last [WSRMP] period of Agreement in time shall apply and only one wrongful act limit shall be available for each such multi-period of Agreement wrongful act.
>
> [WSRMP's]'s limit of liability for Errors and Omissions coverage under Article IV of this Agreement shall be the aggregate of all damages, payments, legal fees and defense costs, and other charges and expenses arising from any covered wrongful act during the term of this Agreement, but shall not exceed the limits of liability set forth below.

Dkt. No. 84 at 7; *see also* Dkt. No. 94 at 132, 155. Both Coverage Agreements also set forth the limits applicable to claims "arising out of sexual abuse" in an aggregation provision:

> All claims based on or arising out of sexual abuse by an employee or volunteer, or more than one employee and/or volunteer acting in concert, will be considered as arising out of one wrongful act and shall be deemed to have been committed at the time of the last of such acts or alleged acts, regardless of:
>
> 1. the number of persons sexually abused;
> 2. the number of locations where the sexual abuse occurred;
> 3. the number of acts of sexual abuse; or
> 4. the period of time over which the sexual abuse took place. If a series of related wrongful acts committed by one or more District employees or volunteers takes place over more than one [WSRMP] period of Agreement, the wrongful acts shall be deemed to have been committed during the last [WSRMP] period of Agreement, only the coverage and limits of that Agreement will apply, and only one wrongful act limit shall be available.

Dkt. No. 84 at 7; *see also* Dkt. No. 94 at 133, 156. The parties appear to agree that the Coverage Agreements are governed by Washington law.

**C.    WSRMP's Reinsurance Agreements**

WSRMP procured reinsurance policies applicable to losses exceeding WSRMP's self-insured limit. Dkt. No. 84 at 8. WSRMP entered into an agreement with Sompo International Reinsurance ("Sompo") effective January 1, 2003 through August 31, 2004 ("2003–04 Reinsurance Agreement"). Dkt. No. 1-1 at 8. WSRMP also entered into an agreement with Munich (formerly known as American Re-Insurance Company) for the 2004–05 coverage year ("2004–05 Reinsurance Agreement"), effective September 1, 2004 to September 1, 2005, which provides as follows:

> [Munich] agrees to indemnify [WSRMP], on an excess of loss basis, for Ultimate Net Loss paid by [WSRMP] as a result of losses paid to [WSRMP's] Members under its Coverage Agreement No. COV 04-05 . . . which losses occur or, where appropriate, which claims are made under the Coverage Agreement, on or after 12:01 AM Pacific Standard Time September 1, 2004 and classified by [WSRMP] as follows, subject to the terms and conditions set forth in this Agreement.

Dkt. No. 84 at 8; Dkt. No. 94 at 171. The subsequent reinsurance agreement between WSRMP and Munich for the 2005–06 coverage year ("2005–06 Reinsurance Agreement"), effective September 1, 2005 to September 1, 2006, similarly provides:

> [Munich] agrees to indemnify [WSRMP] on an excess of loss basis for Ultimate Net Loss paid by [WSRMP] as a result of losses occurring or wrongful acts on or after [12:01] A.M., Pacific Standard Time, September 1, 2005 under its Coverage Agreement No. COV 05-06 . . . and classified by [WSRMP] as indicated below, subject to the terms and conditions set forth in this Agreement. It is herein specifically agreed that there shall be no liability under this Agreement for known acts prior to the inception of this Agreement.

Dkt. No. 84 at 8; Dkt. No. 94 at 201. These agreements between WSRMP and Munich (the "Reinsurance Agreements") are governed by Washington law. Dkt. No. 84 at 2.

WSRMP provided relevant documents regarding its the amounts it paid in defense, judgment, and settlement of claims against the District in the Underlying Lawsuits to both Sompo and Munich. Dkt. No. 27 at 9; Dkt. No. 62 at 2; Dkt. No. 84 at 8. On April 7, 2023, WSRMP

requested reimbursement from Munich pursuant to the terms of the 2005–06 Reinsurance Agreement. Dkt. No. 84 at 8. On April 19, 2023, Munich refused WSRMP's request for payment. *Id.* at 9. Sompo likewise denied coverage. Dkt. No. 27 at 9.

D.  **Procedural History**

WSRMP filed suit against Sompo and Munich in King County Superior Court, seeking a declaration that Sompo and Munich were obligated to reimburse WSRMP for the amounts that WSRMP paid in the Underlying Lawsuits and bringing claims against them for breach of contract and injunctive relief. *See* Dkt. No. 1-1. On June 28, 2021, Sompo removed the action to this Court. Dkt. No. 1. Sompo then moved to compel arbitration pursuant to an arbitration clause in the 2003–04 Reinsurance Agreement, Dkt. No. 32, and on January 17, 2023, this Court granted the motion and stayed the proceedings against both Defendants pending the outcome of arbitration between WSRMP and Sompo. Dkt. No. 55 at 12–13.

Sompo and WSRMP concluded arbitration on February 9, 2023, and WSRMP moved on May 1, 2023 to file a second amended complaint that omitted all claims previously asserted against Sompo and amended its claims against Munich. Dkt. No. 61 at 3. On August 8, 2023, the Court granted WSRMP's motion, Dkt. No. 83, and WSRMP filed its second amended complaint on August 16, 2023. Dkt. No. 84.

WSRMP continues to assert causes of action for declaratory relief and breach of contract against Munich in its second amended complaint. *Id.* at 9. It asks the Court to declare that the Reinsurance Agreements insure WSRMP for the amounts WSRMP "paid in defense, judgment, and settlement of claims against the District" in the Underlying Lawsuits. *Id.* WSRMP also alleges that Munich breached the Reinsurance Agreements "by disputing coverage" and by "refusing to reimburse WSRMP under the terms of the" Reinsurance Agreements. *Id.* WSRMP claims that it is entitled to damages at least equal to the amounts it paid in defense, judgment, and settlement of

claims against the District in the Underlying Lawsuits. *Id.* at 9–10.

On September 22, 2023, Munich moved for judgment on the pleadings. Dkt. No. 88. On October 16, 2023, WSRMP responded to Munich's motion and filed its own cross-motion for summary judgment, which it later asked the Court to treat as a judgment on the pleadings. Dkt. Nos. 89, 93.

## II.   DISCUSSION

### A.   Jurisdiction

The Court is able to determine that diversity jurisdiction exists under 28 U.S.C. § 1332 and 28 U.S.C. § 1441. There is complete diversity of parties because WSRMP is a Washington interlocal cooperative with members who are citizens of Washington state, Dkt. No. 84 at 1–2; *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (the citizenship of a non-corporate entity is determined by the citizenship of each of its members), while Munich is an insurance company incorporated in Delaware with its principal place of business in Princeton, New Jersey, Dkt. No. 1 at 2–3.[2] The amount in controversy requirement is met because the District settled the Underlying Lawsuits for greater than $75,000 and WSRMP seeks reimbursement of that amount from Munich. Dkt. No. 84 at 4–5, 10.

### B.   Legal Standard

A party may move for judgment on the pleadings at "any time after the pleadings are closed" but "early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Parker v. Cnty. of Riverside*, 78 F.4th 1109, 1112 (9th Cir. 2023)

---

[2] Despite prior warnings from the Court regarding the importance of adequately pleading diversity jurisdiction, *see, e.g.*, Dkt. No. 55 at 6–7, WSRMP fails to adequately plead diversity jurisdiction in its Second Amended Complaint by failing to plead Munich's citizenship. Dkt. No. 84 at 2. *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970) ("Failure to make proper and complete allegations of diversity jurisdiction relegates a litigant to . . . jurisdictional purgatory[.]").

(quoting *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999)). A Rule 12(c) motion is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)); *see also Dworkin*, 867 F.2d at 1192 ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing."). Therefore, unlike with motions for summary judgment where the entire evidentiary record is considered, when reviewing motions for judgment on the pleadings, the Court considers only (1) the pleadings, (2) documents incorporated by reference into the complaint, and (3) matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court "accept[s] all factual allegations in the [relevant pleading] as true and construe[s] them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

C. **Scope of Documents Under Consideration**

A district court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a 12(c) motion] into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. These exceptions are designed to prevent plaintiffs from deliberately omitting documents on which their claims are based in order to survive a motion to dismiss. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908; *see also Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 992 (W.D. Wash. 2022) ("Mere reference to a document in the complaint is not sufficient[;] rather, the document must be integral to or form the basis of plaintiff's claims."). The Ninth Circuit has distilled the inquiry into

a three-part test: (1) the complaint must refer to the document; (2) the document must be central to the plaintiff's claim; and (3) the document's authenticity cannot be disputed by either party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the "incorporation by reference" doctrine has been extended to situations in which the plaintiff does not expressly reference the document or allege its contents in the complaint. A district court may still consider a document pursuant to the doctrine when "the plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 992 (W.D. Wash. 2020).

Here, WSRMP relies on numerous documents outside the complaint, including but not limited to the District's interrogatory responses in the R.G. Suit, R.G.'s Standard Tort Claim Form, the complaints in the Underlying Lawsuits, a deposition transcript from the R.G. Suit, the petition for approval of settlement in the R.G. Suit, the order approving the settlement in the R.G. Suit, the orders of dismissal in the Underlying Lawsuits, the Coverage Agreements, and the Reinsurance Agreements. Dkt. Nos. 90, 94. Because the complaint relies on and refers to the contents of the Coverage Agreements, Reinsurance Agreements, and related endorsements, Dkt. No. 84 at 5–8; Dkt. No. 90 at 125–222, and Munich does not dispute the authenticity of these documents, the Court considers them. WSRMP does not advance an argument in support of considering any of the remaining documents cited in its cross-motion and opposition brief and its reply brief.[3] The Court therefore declines to consider them. The Court also declines to convert either party's motion

---

[3] Oddly, WSRMP objects to Munich's reliance on the Coverage Agreements and Reinsurance Agreements. Dkt. No. 89 at 14. This objection is meritless.

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 10

into one for summary judgment, which would require all parties to be "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

**D.      Munich is Not Entitled to Judgment on the Pleadings**

Munich asserts that, even taking all of WSRMP's allegations as true, "neither the 2004-2005 WSRMP Policy nor the 2005-2006 WSRMP Policy can apply to the claims in the Underlying Lawsuits against the Puyallup School District because the last act of sexual abuse did not take place within either Policy period." Dkt. No. 88 at 12. WSRMP responds that its Second Amended Complaint sufficiently alleges that "wrongful acts" occurred during the policy periods, noting that it alleges that "the last act of retaliation arising out of [the] abuse t[ook] place on or around December 1, 2005." Dkt. No. 89 at 4, 14–18; *see also* Dkt. No. 93 at 5.

The sexual abuse aggregation provision of both Coverage Agreements provides that "[a]ll claims based on or arising out of sexual abuse by an employee or volunteer . . . will be considered as arising out of one wrongful act and shall be deemed to have been committed at the time of the last of such acts or alleged acts[.]" Dkt. No. 84 at 7; *see also* Dkt. No. 94 at 133, 156. Munich does not dispute that "[t]he phrase '[a]ll claims based on or arising out of sexual abuse by an employee' would include the claims against the District for failure to prevent retaliation or the teacher Paulsen coming onto school property." Dkt. No. 92 at 6; *see also* Dkt. No. 84 at 6 (the Coverage Agreements define "wrongful act" as "any actual or alleged *error*, misstatement, misleading act or statement, or any *omission* committed solely in the course of performance of duties for the District," and "includes *a series of related acts* giving rise to a suit, claim, or damages." (emphases added)). However, Munich contends that the contract language "tether[s]" those acts to sexual abuse for purposes of determining when the relevant act is deemed to have occurred. Dkt. No. 92 at 6. Under this theory, "the last of such acts or alleged acts" refers only to acts of "sexual abuse by an employee" and not to related acts that do not constitute sexual abuse, such as retaliation. *Id.*

at 7 ("The only logical reading of the 'last of such acts or alleged acts' is that it refers to acts or alleged acts of 'sexual abuse by an employee', the acts or alleged acts out of which the basket of claims arises."). Because the last act of sexual abuse committed by Paulsen preceded the policy periods, Munich avers that it does not owe WSRMP coverage for the settlements. *Id.* at 8, 12.

Munich grounds its reasoning in the aggregation provision's statement that it applies "regardless of the number of persons *sexually abused*, the number of locations where the *sexual abuse* occurred, the number of acts of *sexual abuse* and the period of time over which the *sexual abuse* took place." Dkt. No. 92 at 7; *see also* Dkt. No. 88 at 14, 20. According to Munich, these references to the circumstances of sexual abuse would not be needed if the aggregation provision covered *all* wrongful acts, including those do not involve sexual abuse. Dkt. No. 92 at 7.

But the provision is not so limited. As WSRMP points out, Dkt. No. 93 at 4, the proviso does not just contain references to sexual abuse; it goes on to say, "If a series of related wrongful acts committed by one or more District employees or volunteers takes place over more than one [WSRMP] period of Agreement, the wrongful acts shall be deemed to have been committed during the last [WSRMP] period of Agreement, only the coverage and limits of that Agreement will apply, and only one wrongful act limit shall be available," Dkt. No. 94 at 133, 156. Moreover, Munich's argument requires "wrongful act" to have two different meanings:

- For purposes of all portions of the Coverage Agreements other than the aggregation provision, "wrongful act" retains its defined meaning of "any actual or alleged error, misstatement, misleading act or statement, or any omission committed solely in the course of performance of duties for the District," including "a series of related acts giving rise to a suit, claim, or damages." Dkt. No. 94 at 138–139, 160.

- For purposes of the aggregation provision, "wrongful act" holds a narrower meaning including only acts of sexual abuse by an employee.

ORDER DENYING MOTIONS FOR JUDGMENT ON THE PLEADINGS - 12

The principles of contract interpretation do not support such a strained and contradictory construction. The parties to the Coverage Agreements chose to specifically define "wrongful act" in the definitions section of the Coverage Agreements, and nothing in the aggregation provision indicates that the parties intended to depart from that definition. The Court can "neither disregard contract language which the parties have employed nor revise the contract under a theory of construing it." *Equilon Enters. LLC v. Great Am. Ins. Co.*, 132 P.3d 758, 761 (Wash. Ct. App. 2006) (quoting *Wagner v. Wagner*, 621 P.2d 1279, 1283 (Wash. 1980)). If the parties intended the aggregation provision to limit the wrongful acts to only those that directly involved sexual abuse by an employee, they could have put that language into the provision. But they did not, and the Court is not permitted to read into a contract language that was not written. *See Hearst Commc'ns v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) ("We do not interpret what was intended to be written but what was written.").

In sum, the language of the aggregation provision specifically covers "[a]ll claims based on *or arising out* of sexual abuse by an employee"—including those claims that are not themselves allegations of sexual abuse. Dkt. No. 84 at 7 (emphasis added). Because WSRMP's Second Amended Complaint alleges that it settled retaliation and other claims based on covered conduct occurring within the policy periods, *see* Dkt. No. 84 at 4, Munich's motion is denied.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES both Munich's motion for judgment on the pleadings, Dkt. No. 88, and WSRMP's cross-motion for judgment on the pleadings, Dkt. No. 89. WSRMP must file an amended complaint that adequately pleads diversity jurisdiction by October 3, 2024. No other amendments will be permitted; WSRMP must also file a redlined version of its complaint reflecting all changes made to the Second Amended Complaint by the deadline.

The Court also DIRECTS the parties to meet and confer and file a joint status report proposing a case schedule by no later than October 10, 2024. *See* Dkt. No. 59; Dkt. No. 95-1 at 2.

Dated this 26th day of September, 2024.

*Lauren King*

Lauren King
United States District Judge